# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CR-24-333-G |
| | ) |
| RAY ALLEN STANART and | ) |
| DWAYNE LEE STANART, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Now before the Court is a Joint Motion to Quash and Suppress (Doc. No. 42) filed by Defendants Ray Allen Stanart and Dwayne Lee Stanart. The Government has responded in opposition (Doc. No. 48). In addition, the parties have filed supplemental briefs (Doc. Nos. 70, 71). The Court held a hearing on the Joint Motion on February 28, 2025. *See* Doc. No. 58; Hr'g Tr. (Doc. No. 69).[1]

*I. Background*

On November 9, 2023, a district judge for the District Court of Canadian County, Oklahoma, issued a warrant to search Defendants' residence at 2116 S. Cemetery Road in Yukon, Oklahoma ("the Residence") for evidence of stolen property. The search warrant was issued based on a one-page affidavit ("Affidavit," Doc. No. 48-1) submitted by Sergeant Charles McNeil, who was an investigator for the Canadian County Sheriff's

---

[1] In ordering this hearing, the Court made no finding regarding Defendants' Joint Motion. Rather, the Court sua sponte found that "an evidentiary hearing would be useful in resolving the present motion, without any threshold determination." *United States v. Ezeah*, No. CR-16-29-D, 2016 WL 7410735, at *1 n.1 (W.D. Okla. Dec. 22, 2016).

Department. The warrant was executed on November 9, 2023, by officers from the Canadian County Sheriff's Department.

On August 20, 2024, the grand jury returned an Indictment (Doc. No. 1) charging Defendants in three counts with violations of 18 U.S.C. § 922(g)(1) that took place on or about November 9, 2023. Defendants now move to quash the search warrant and suppress all evidence seized during the search of the Residence based upon the alleged invalidity of the underlying Affidavit, pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). The Government argues that the Affidavit was proper and the warrant therefore supported by probable cause. Alternatively, the Government asserts that even if probable cause was lacking, suppression is unwarranted because the executing officers acted in good-faith reliance upon the warrant.

   II. *Relevant Standards*

Pursuant to the Fourth Amendment, "[a] search warrant can issue only upon a showing of probable cause." *United States v. Long*, 774 F.3d 653, 658 (10th Cir. 2014); *see* U.S. Const. amend. IV. "'In dealing with probable cause, as the very name implies, the court deals with probabilities' that are not technical but rather the 'factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Sanchez*, No. CR-18-245-D, 2019 WL 113780, at *2 (W.D. Okla. Jan. 4, 2019) (omission and alterations omitted) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)). The probable cause standard "requires more than mere suspicion but less evidence than is necessary to convict." *Id.* (internal quotation marks omitted).

To support issuance of a search warrant, the affidavit "must provide a substantial

basis to conclude that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Long*, 774 F.3d at 658 (internal quotation marks omitted). "That is, the affidavit must establish 'a nexus between suspected criminal activity and the place to be searched.'" *Sanchez*, 2019 WL 113780, at *2 (omission omitted) (quoting *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005)).

In *Franks v. Delaware*, the Supreme Court held that a defendant may present, in certain circumstances, a "subfacial challenge to [the] veracity" of a warrant affidavit. *Franks*, 438 U.S. at 160. "There is . . . a presumption of validity with respect to the affidavit supporting the search warrant." *Id.* at 171. But "the Fourth Amendment prohibits an affiant from recklessly or intentionally including a material, false statement of fact in a search-warrant affidavit." *United States v. Norton*, 130 F.4th 824, 827 (10th Cir. 2025). Because "[w]hen the Fourth Amendment demands a factual showing sufficient to comprise probable cause, the obvious assumption is that there will be a *truthful* showing,"

> [a] search warrant must be voided and the fruits of the search suppressed where a court (1) finds that the affiant knowingly or recklessly included false statements in or omitted material information from an affidavit in support of a search warrant and (2) concludes, after excising such false statements and considering such material omissions, that the corrected affidavit does not support a finding of probable cause.

*Franks*, 438 U.S. at 164-65 (internal quotation marks omitted); *United States v. Garcia-Zambrano*, 530 F.3d 1249, 1254 (10th Cir. 2008). The defendant bears the burden of showing the invalidity of the warrant affidavit and establishing a *Franks* violation. *See Franks*, 438 U.S. at 171; *Norton*, 130 F.4th at 830.

### III. Discussion

Paragraph 1 of Sergeant McNeil's Affidavit states, in relevant part:

> [Y]our affiant has reason to believe that, there is now located at 2116 S Cemetery Road, Yukon, Ok evidence of stolen property at this address, including but not limited to documents pertaining to a 2015 Chevrolet Camaro, . . . and a white foot enclosed trailer and Stanarts personal mobile phone and computers as well as books, records, receipts, notes, ledgers, financial statements, and written or typed papers.

Aff. ¶ 1. The disputed allegations of the Affidavit are contained in Paragraph 2, which addresses a 2015 Chevrolet Camaro that had been reported by the owner to be improperly taken or retained, and in Paragraph 3, which addresses a white, 16-foot enclosed tandem-axle trailer that had been reported stolen from an oil field worksite. *See id.* ¶¶ 2, 3.

#### A. *Paragraph 2: The 2015 Chevrolet Camaro*

Paragraph 2 of the Affidavit reads as follows, with the disputed portions emphasized herein:

> These items are both evidence of crimes committed in Canadian County in October 2023. On 27 October 2023 Canadian County Deputies **were called to the listed residence** after taking a report (case # 2301018) about the stolen Camaro **and Deputy Jeffery Bouillion spoke to the resident**, RAY ALAN STANART who told Deputy Bouillion that he sold the Camaro on Facebook Marketplace after receiving permission from the Lien holder, Carvana and that he had documents proving this. Since that time Deputy Bouillon spoke with representatives from Carvana **who told us that they had not given Stanart permission to sell the vehicle**.

*Id.* ¶ 2 (emphasis added).

Defendants first object that the allegation that "Canadian County Deputies were called to [the Residence] . . . and . . . spoke to" Defendant Ray Allen Stanart regarding the Camaro is false. *Id.*; *see* Defs.' Mot. at 3; Defs.' Suppl. Br. (Doc. No. 70) at 2. The

4

Government concedes that this allegation incorrectly describes the actions taken by Deputy Bouillon in his investigation of the missing Camaro. As reflected in the Government's briefing and in the hearing testimony, the true facts are that (1) rather than being "called to" and personally going to the Residence, Deputy Bouillon met the Camaro's owner at a separate location and then identified the Residence as the address of the incident for purposes of his investigation; and (2) rather than speaking to Defendant Ray Allen Stanart in person at the Residence, Deputy Bouillon communicated with Mr. Stanart by telephone. *See* Gov't's Resp. at 4; Gov't's Suppl. Br. (Doc. No. 71) at 5; Hr'g Tr. 14:19-25, 21:11-22:13. The Court accepts these as false statements.

Defendants also object to the Affidavit's characterization of Deputy Bouillon's conversation with Carvana. Although the Affidavit states that Carvana representatives told Deputy Bouillon "they had not given [Defendant Ray Allen Stanart] permission to sell the vehicle," the record reflects that Carvana did not discuss the Camaro directly. Rather, a representative for the company told Deputy Bouillon that he could not provide details about that account but that Carvana "would not have . . . authorized" Defendant Ray Allen Stanart to sell the vehicle. Hr'g Tr. 23:7-20 (Deputy Bouillon testifying that the Carvana agent told him "that is not something that they would have done"). The Court finds that Sergeant McNeil's description of what was stated is false to the extent that it indicates that the Carvana representative had specifically denied the grant of permission to sell the Camaro and not, as actually occurred, described a general policy that, if faithfully applied, would preclude granting permission to sell the Camaro.

Having reviewed the arguments and the relevant record, however, the Court finds

5

no showing has been made that the cited misstatements were knowingly or recklessly included in the Affidavit.

> To establish reckless disregard in the presentation of information to a magistrate judge, there must exist evidence that the officer in fact entertained serious doubts as to the truth of his allegations[,] and a factfinder may infer reckless disregard from circumstances evincing obvious reasons to doubt the veracity of the allegations. The failure to investigate a matter fully, to exhaust every possible lead, interview all potential witnesses, and accumulate overwhelming corroborative evidence rarely suggests a knowing or reckless disregard for the truth. To the contrary, it is generally considered to betoken negligence at most.

*Stonecipher v. Valles*, 759 F.3d 1134, 1142 (10th Cir. 2014) (alterations, omission, citation, and internal quotation marks omitted). Here, the three false statements detailed above were the result of Sergeant McNeil's misunderstanding of what had transpired with the Camaro investigation. The evidence shows that Sergeant McNeil based his statements on a reasonable source—his own conversations with Deputy Bouillon—and that Sergeant McNeil merely mistakenly described certain facts tangential to, or at least of relatively low importance to, the investigation. *See*, *e.g.*, Hr'g Tr. 68:2-71:8 (McNeil testifying that there was no reason for him to misstate the means and location of the conversation between Deputy Bouillon and Defendant Ray Allen Stanart). The evidence does not support a finding that Sergeant McNeil had "serious doubts" about what he was told or "obvious reasons" for such doubt. *Stonecipher*, 759 F.3d at 1142. Because Defendants have only shown "negligence or innocent mistake" by Sergent McNeil in making the three misstatements in Paragraph 2, *Franks*, 438 U.S. at 171, Defendants have not shown any

entitlement to relief based on those misstatements.[2]

    B. *Paragraph 3: The Stolen Trailer*

In Paragraph 3, the Affidavit states:

> On 02 November 2023 a white 16 foot white tandem axle trailer was stolen from a Devon oil field sight in Canadian County (case # 2301034). On 09 Nov 2023 I observed a white 16 foot enclosed trailer matching the description of the trailer taken in the crime. I sent photos of the trailer to Canadian County Investigator Doug Wathor, who believes this trailer could be the trailer taken in the crime. On 08 Nov 2023 Investigator Wathor contacted one of the suspects in the crime who refused to speak with Wathor and would not disclose the location of the trailer. While conducting surveillance on 2116 the previous 3 days the trailer was not present at 2116 Cemetery Road but appeared at the property the day after Investigator made contact with another suspect.

Aff. ¶ 3.

Defendants argue that several material omissions render this portion of the Affidavit defective. Defendants primarily emphasize distinctions between the trailer that appeared at the Residence during Sergeant McNeil's surveillance—a Loadmaster with Oklahoma tag #9535DT and a "Property of Round Table Ent., Inc." decal—and the trailer that was reported stolen—a CM with Oklahoma tag #AX3752 and "J&J Solutions" decals. *See* Defs.' Mot. at 3; Defs.' Suppl. Br. at 2-4. Defendants also criticize the Affidavit's failure to explain that Sergeant McNeil had not seen an image of the actual stolen trailer, although

---

[2] Defendants nominally challenge the Affidavit's references to the Camaro as "stolen," noting that Deputy Bouillon referred to his investigation as one regarding an "embezzled" vehicle. *See* Defs.' Suppl. Br. at 2 (citing Hr'g Tr. 19:12-14). While stealing and embezzling are technically distinct, the officers' indiscriminate interchanging of terms, as well as the lack of clarity regarding what transpired between the owner of the Camaro and Defendant Ray Allen Stanart with regard to the vehicle, at most reflect only "negligence or innocent mistake" on the part of Sergeant McNeil in using the term "stolen." *Franks*, 438 U.S. at 171; *see, e.g.*, Hr'g Tr. 68:22-69:9.

7

he had seen photos of both a similar trailer and of one for sale that the owner believed to be the stolen trailer. *See* Defs.' Mot. at 3; Hr'g Tr. 46:2-15, 55:10-19. The Court agrees with Defendants that, at least as to the physical distinctions between the two trailers, such facts are "material," as "any reasonable person would have known that this was the kind of thing the judge would wish to know." *Stonecipher*, 759 F.3d at 1142 (internal quotation marks omitted).

But Defendants have not shown that these facts were knowingly or recklessly omitted from the Affidavit. "[O]missions are made with reckless disregard if an officer withholds a fact *in his ken*" when presenting information to the court issuing the warrant. *Id.* (emphasis added) (internal quotation marks omitted). It is undisputed that Sergeant McNeil's role in investigating the theft of the trailer was that he was told about a stolen 16-foot tandem-axle white trailer and, while conducting surveillance at the Residence, saw a trailer generally matching that description. According to Sergeant McNeil, the trailer was approximately 30 feet from the roadway and he was driving 50 or 60 miles per hour in an effort to remain undetected, with the result that he was unable to observe details such as the license tag, manufacturer label, and decals. *See* Hr'g Tr. 74:15-75:19, 79:3-7. To corroborate the reasonableness of the comparison, Sergeant McNeil sent video footage from his surveillance to Investigator Wathor, who answered, "that very well could be it." *Id.* at 72:7-73:1.[3]

---

[3] To the extent that Defendants challenge the veracity or accuracy of Investigator Wathor's statement, such challenge is unavailing. The "deliberate falsity or reckless disregard whose impeachment is permitted" under *Franks* "is only that of the affiant." *Franks*, 438 U.S. at

Defendants have not shown that the cited facts were omitted knowingly or "with reckless disregard for the truth." *Franks*, 438 U.S. at 171. While Sergeant McNeil certainly could have discovered and supplied more information in Paragraph 3, he has provided a reasonable explanation for his limited observation of the trailer at the Residence. Sergeant McNeil "cannot be held accountable for failing to divine the materiality of every possible scrap of evidence." *Stonecipher*, 759 F.3d at 1142 (internal quotation marks omitted). Defendants are not entitled to relief "where police have been merely negligent in checking or recording the facts relevant to a probable-cause determination." *Franks*, 438 U.S. at 171 (explaining that "[a]llegations of negligence or innocent mistake are insufficient" to mandate an evidentiary hearing).[4]

## CONCLUSION

For the reasons outlined herein, Defendants' Joint Motion to Quash and Suppress (Doc. No. 42) is DENIED.

---

171. Here, the affiant was Sergeant McNeil, who accurately informed the court to which the warrant application was submitted what Investigator Wathor had said.

[4] Because Defendants fail to make the "substantial preliminary showing" that "a false statement" or any "material omission[]" was "knowingly and intentionally, or with reckless disregard for the truth, included by the affiant in the warrant affidavit," the Court need not determine whether "the exclusion of a false statement" or "the inclusion of a material omission" in the Affidavit "would have vitiated probable cause." *United States v. Cervini*, 16 F. App'x 865, 869 (10th Cir. 2001) (internal quotation marks omitted); *see also Garcia-Zambrano*, 530 F.3d at 1254. Nor does the Court need to address the Government's alternative arguments for denial of the Joint Motion.

IT IS SO ORDERED this 24th day of April, 2025.

                                                                            */s/ Charles B. Goodwin*
CHARLES B. GOODWIN
United States District Judge